FILED
2026 Jul-16 PM 03:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| LATISHA SOUTHWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-01157-MHH-HNJ |
| | ) | |
| ISIAH NELOMS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Latisha Southward ("Southward"), through counsel, filed a second amended complaint under 42 U.S.C. § 1983 alleging violations of her rights under the Constitution of the United States and Alabama law. (Doc. 12). Southward names as defendants Correctional Officers Isiah Neloms and McDaniel. (Doc. 12 at 1, 2). Southward seeks monetary damages, injunctive relief, attorneys' fees, and costs. (Doc. 12 at 6-7).

In accordance with its usual practice, the court referred the complaint to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). (*See* Doc. 4); *see also McCarthy v. Bronson*, 500 U.S. 136 (1991).

For the reasons explained herein, the undersigned Magistrate Judge **RECOMMENDS** the court **DENY** Officer McDaniel's Motion to Dismiss. (Doc. 18).

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a cause of action if it fails to state a claim upon which relief may be granted. To assess a motion to dismiss under that rule, courts must first take note of the elements a plaintiff must plead to state the applicable claims at issue. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

After establishing the elements of the claims at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity. *Id.* at 679. Well-pleaded factual allegations do not encompass mere "labels and conclusions," legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action. *Id.* at 678 (citations omitted). In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in the plaintiff's favor. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements. *Iqbal*, 556 U.S. at 678. Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense." *Id.* at 678, 679 (citations omitted). The plausibility standard does not equate to a "probability requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are

"'merely consistent with a defendant's liability.'" *Id.* at 678, 679 (citations omitted).

## II. FACTUAL ALLEGATIONS

State authorities held Southward as a pretrial detainee at the Lauderdale County Detention Center from April 16, 2025, through May 5, 2025. (Doc. 12 at 2 ¶ 7).

During her detention, jail officials placed Southward in an "isolation cell." (Doc. 12 at 2 ¶ 8). Although Southward did not threaten self-harm and lacked suicidal ideation, jail officials subsequently placed Southward on "suicide watch." (Doc. 12 at 2 ¶ 8). While on suicide watch, jail officials provided Southward with only a "'turtle suit' or anti-suicide garment, similar to a heavy blanket, to cover herself with." (Doc. 12 at 2 ¶ 9). The turtle suit – the only clothing provided to Southward – proved insufficient to cover Southward's breasts and genitals, which allowed male corrections officers, trustees, and other men in the jail to view her breasts and genitals. (Doc. 12 at 2 ¶ 9).

Defendant Neloms worked night shift at the jail on three consecutive nights while Southward remained on suicide watch. (Doc. 12 at 2 ¶ 10). On each of these nights, "Neloms sexually harassed [Southward] by using his authority as a correctional officer to coerce her to expose her breasts and genitals to him for the purpose of his sexual gratification." (Doc. 12 at 3 ¶ 11).

On the first night, Neloms approached Southward's cell with a male trustee because water from a running toilet required mopping. (Doc. 12 at 3 ¶ 12). Neloms

ordered Southward to, "'Stand still, open your legs so I can see your pussy.'" (Doc. 12 at 3 ¶ 12).

After learning of Southward's inability to place a telephone call, Neloms offered to place a telephone call on her behalf if she "would show him her body" by bending over to expose her genitals. (Doc. 12 at 3 ¶¶ 13-14). When Southward eventually complied with his demands, Neloms commented Southward "looked good" and "he wished he could be 'in there.'" (Doc. 12 at 3 ¶¶ 14-15).

Neloms came to Southward's cell every 15 minutes, each time telling her "to spread her legs and show him her genitals" and "'open up' her genitals" while she sat on the floor. (Doc. 12 at 3 ¶ 16). Neloms "often asked for 'more'" and directed Southward "to show him 'some more.'" (Doc. 12 at 4 ¶ 18). When Southward complied, "Neloms would rub his groin through his pants, lick his lips, and make sounds." (Doc. 12 at 4 ¶ 18). Neloms repeatedly offered to place telephone calls on Southward's behalf, allow her to shower, and assist in removing her from suicide watch in exchange for Southward's exposure of her breasts and genitals. (Doc. 12 at 3 ¶ 17).

Southward repeatedly reported Neloms's sexual misconduct to Officer McDaniel, the other officer working night shift. (Doc. 12 at 4 ¶ 19). Officer McDaniel took no action and "allowed Neloms to continue sexually harassing [Southward]." (Doc. 12 at 4 ¶ 19).

When a detective questioned Southward about Officer Neloms, Southward recounted Neloms's behavior to the detective. (Doc. 12 at 4 ¶ 23). Southward's release

from suicide watch occurred at the same time as Officer Neloms's removal from duty. (Doc. 12 at 4 ¶ 23).

## III. Analysis

Southward alleges Defendant Officer McDaniel violated her Fourteenth Amendment rights when he "failed to intervene in Neloms's sexual harassment . . . despite having actual knowledge of the harassment and the opportunity to intervene." (Doc. 12 at 5 ¶ 28).

Officer McDaniel argues Southward's claim against her warrants dismissal because she stands entitled to qualified immunity. (Doc. 18 at 1-2). Officer McDaniel argues Southward failed to plausibly aver a violation of her constitutional rights because (1) failure to intervene claims may only arise in the excessive force context; and (2) failure to intervene claims may only arise when a constitutional violation occurs in a defendant's presence. (Doc. 19 at 2-5, 6). Officer McDaniel further argues applicable law did not clearly establish she had "a duty to intervene to stop sexual harassment that occur[red] outside of her presence." (Doc. 19 at 6-9).

Qualified immunity protects governmental officials performing discretionary functions in their individual capacity from civil suit and liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). There exists no dispute Officer McDaniel performed a discretionary function in these circumstances. As such,

the undersigned analyzes whether she stands entitled to qualified immunity.

In resolving questions of qualified immunity, courts engage in a two-pronged inquiry. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). "The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Id.* at 655-56 (cleaned up) (internal quotation marks and citation omitted). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730 (2002)). *See also Barcelona v. Burkes*, No. 21-14285, 2022 WL 15137410, at *2 (11th Cir. Oct. 27, 2022) (per curiam) ("[Defendant] is entitled to qualified immunity unless: (1) he clearly violated the plaintiff's constitutional rights, and (2) the violated constitutional right was clearly established." (citing *Waldron v. Spicher*, 954 F.3d 1297, 1304 (11th Cir. 2020)). "Courts have discretion to decide the order in which to engage these two prongs." *Tolan*, 572 U.S. at 655 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

A clearly established constitutional right arises from "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Hill*, 797 F.3d at 979 (citation omitted). Under the second, afore-cited method, "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate

federal law when the official acted." *Id.* (citation omitted). Although the "clearly established right must be defined with specificity," *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam), "[t]he 'very action in question' does not have to have been previously held unlawful, but the unlawfulness of the conduct must be apparent in light of pre-existing law," *Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In further exposition, a right stands clearly established if a defendant acted on "fair warning" that his conduct violated the constitutional rights of the plaintiff. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citing *United States v. Lanier*, 520 U.S. 259 (1997)). As elaborated, "fair warning" may emanate either from factually similar case law or where the right is one of 'obvious clarity' – i.e., where the officer's conduct "lies so obviously at the very core of what the [constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to [the official], notwithstanding the lack of fact-specific case law" on point. *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009); *see also Hope*, 536 U.S. at 745 (holding that "[t]he obvious cruelty inherent" in putting prisoners in certain wantonly "degrading and dangerous" situations provides officers "with some notice that their alleged conduct violate[s]" the Eighth Amendment); *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015) ("Forcing a prisoner to soil himself over a two-day period while chained in a hospital bed creates an obvious health risk and is an affront to human dignity. Laughing at and ridiculing an inmate who is forced to sit in his own feces for an extended period of time is not merely unreasonable, but an act of

'obvious cruelty.'" (citing *Hope*, 536 U.S. at 745)).

Litigants may rely upon binding decisions of the Supreme Court, the Eleventh Circuit, and the highest court of the pertinent state to ascertain clearly established rights. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) (citing *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1032 n. 10 (11th Cir. 2001 (en banc), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007)).

As Officer McDaniel also contends Southward failed to state a viable failure-to-intervene claim, the undersigned elects to assess whether Southward's second amended complaint plausibly alleges Officer McDaniel violated Southward's constitutional rights before turning to whether the law clearly established said rights at the time of the violation.

**A. Constitutional Violation**

Southward alleges she

> repeatedly reported [Defendant] Neloms's sexual harassment to Officer McDaniel, the other officer on night shift. However, McDaniel failed to intervene, despite having the opportunity to do so. Instead, McDaniel allowed Neloms to continue sexually harassing [Southward].

(Doc. 12 at 4 ¶ 19). While the parties characterize Southward's claim against Officer McDaniel as a failure-to-intervene claim, the undersigned discerns Southward's allegations as asserting a failure-to-protect claim. *See Johnson v. Boyd*, 701 F. App'x 841, 845–46 (11th Cir. 2017) (per curiam) (upholding dismissal of plaintiff's failure-to-protect claim because defendants did not know of threat posed by plaintiff's assailant,

yet reversing dismissal of plaintiff's failure-to-intervene claim because defendants were present when assailant attacked plaintiff); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (per curiam) (affirming dismissal of plaintiff's failure-to-protect claim because defendant did not know of assailant's threat, yet reversing dismissal of alleged failure-to-intervene claim because defendant stood by "while watching the attack"); *Scott v. Dunn*, 794 F. Supp. 3d 1119, 1129 n.2 (M.D. Ala. 2023) ("Courts often separately denominate deliberate indifference failure-to-protect and failure-to-intervene claims; however, the elements are the same, and a failure-to-intervene claim is a type of failure-to-protect claim. . . . Failing to intervene is just one way in which an official can recklessly respond to a substantial risk of serious harm so as to constitute deliberate indifference." (citing *Murphy*, 159 F. App'x at 948)); *Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 405 n.35, 413 (E.D.N.Y. 2023) ("This Court separately analyzes Plaintiff's failure to protect and failure to intervene claims, although the parties do not do so. The claims are distinct, even though both claims require a showing that an officer 'acted with "deliberate indifference to a substantial risk of serious harm"' to an inmate or detainee. . . . Just as prison officials may be liable for failing to protect an inmate from an assault of which they had knowledge or should have had knowledge, they also may be liable for failing to intervene in an assault.") (citations omitted); *Mohamed v. Jones*, No. 20-CV-02516-RBJ-NYW, 2022 WL 523440, at **17, 18 (D. Colo. Feb. 22, 2022) (A "failure to intervene is one of several factual theories under which an Eighth Amendment claim may be brought. . . . Courts similarly recognize that claimants may

bring an Eighth Amendment excessive force claim based on a failure to protect the claimant from the violence of other inmates. . . . Notably, 'a failure to intervene claim is essentially the same as a failure to protect claim, translated from a threat to an active situation.'") (citations omitted) (alteration adopted), *report and recommendation adopted sub nom. Mohamed v. Huddleston*, No. 1:20-CV-02516-RBJ-KMT, 2022 WL 22353363 (D. Colo. May 18, 2022); *Coleman v. LeBlanc*, No. CV 19-395-JWD-SDJ, 2020 WL 4679545, at *5 (M.D. La. July 28, 2020) ("A failure to intervene claim is distinct from a failure to protect claim, and one can exist without the other.") (footnote & citation omitted), *report and recommendation adopted*, No. CV 19-395-JWD-SDJ, 2020 WL 4680145 (M.D. La. Aug. 12, 2020); *Outley v. Batiste*, No. CV 17-1782-SDD-EWD, 2019 WL 4265075, at *4 (M.D. La. Aug. 23, 2019) ("Defendants appear to argue that quick intervention in a fight between inmates negates any cause of action an inmate has for failure to protect. . . . [C]laims for failure to protect versus failure to intervene, though related, are distinct, and one can exist without the other. Because a defendant intervenes quickly does not negate a cause of action based upon that defendant's failure to protect the plaintiff in the first instance.") (footnote omitted)), *report and recommendation adopted*, No. 17-1782-SDD-EWD, 2019 WL 4261852 (M.D. La. Sep. 9, 2019).

Section 1983 plaintiffs may advance an Eighth Amendment claim for failure to protect under two different theories: a "particularized risk claim," where the plaintiff prisoner demonstrates she "was the target of a specific threat or danger, and that the [defendants] subjectively were aware of the individualized danger," or a "dangerous

conditions claim," where the plaintiff prisoner demonstrates "the prison conditions [she] was subjected to were so dangerous that they resulted in cruel and unusual punishment." *Est. of Owens v. GEO Grp., Inc.*, 660 F. App'x. 763, 769 (11th Cir. 2016) (per curaim).[1] Southward's factual allegations implicate the first type, a "particularized risk claim," and those allegations plausibly aver Officer McDaniel failed to protect her from Office Neloms's sexual abuse.

"Beyond restraining prison officials from inflicting 'cruel and unusual punishments' upon inmates, the Eighth Amendment requires officials to take reasonable measures to guarantee the safety of the inmates, including protecting inmates from violence at the hands of other inmates." *Rhiner v. Sec'y, Fla. Dep't of Corr.*, 817 F. App'x 769, 774 (11th Cir. 2020) (per curiam) (citing *Bowen v. Warden, Baldwin State*

---

[1] The Fourteenth Amendment's due process clause governs the treatment of arrestees or pretrial detainees in custody while the Eighth Amendment's prohibition on cruel and unusual punishment governs the treatment of convicted prisoners. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985) (citations omitted).

Southward's averments cast her status as a pretrial detainee at the time her claims arose. (*See* Doc. 12 at 2 ¶ 7). Thus, the Fourteenth Amendment's due process governs her claims. However, in the context of failure-to-protect claims, "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving ... pretrial detainees." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). *See also Christmas v. Nabors*, 76 F.4th 1320, 1331 (11th Cir. 2023) ("Because [plaintiff] was a pretrial detainee, and because his claim involves the deprivation of a 'basic necessity' like access to recreational activity, he must satisfy the Eighth Amendment's objective and subjective standards to prevail on his claim under the Fourteenth Amendment's Due Process Clause."); *Hamm*, 774 F.2d at 1574 (holding "that in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons"). *See also Nelson v. Tompkins*, 89 F.4th 1289, 1299 (11th Cir. 2024); *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013) ("[T]he standards [for deliberate indifference claims] under the Fourteenth Amendment [for pretrial detainees] are identical to those under the Eighth [for convicted prisoners].").

*Prison*, 826 F.3d 1312, 1319-20 (11th Cir. 2016)). To establish a prison official violated her Eighth Amendment rights in the context of a claim alleging a failure to protect and/or prevent harm, a plaintiff must demonstrate the prison official acted with deliberate indifference, which includes both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Green v. Hooks*, 798 F. App'x 411, 421 (11th Cir. 2020) (stating a plaintiff "must show that an objectively serious risk of harm existed *and* that the prison officials were subjectively aware of this risk of harm" to establish a claim for deliberate indifference (citing *Farmer*, 511 U.S. at 834) (emphasis in original)).

Under the objective component, a plaintiff must depict prison conditions "that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (per curiam) (quoting *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016)); *see also Farmer*, 511 U.S. at 834 ("For a claim (like the one here) based on a failure to prevent harm, the [plaintiff] must show that he is incarcerated under conditions posing a substantial risk of serious harm." (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

The subjective component of a deliberate indifference claim requires two showings, one subjective and the other objective. *Marbury*, 936 F.3d at 1233. "Subjectively, the 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and…also draw the inference.'" *Id.* (quoting *Rodriguez v. Sec'y for the Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007)). "In determining subjective knowledge, a court is to inquire whether the defendant was

aware of a 'particularized threat or fear felt by [the plaintiff].'" *McBride v. Rivers*, 170 F. App'x 648, 654 (11th Cir. 2006) (per curiam) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (per curiam)). To establish the requisite awareness, a plaintiff must demonstrate that prison "officials…possess enough details about a threat to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Marbury*, 936 F.3d at 1236 (footnote citation omitted); *see also Green*, 798 F. App'x at 424 ("[W]hile not identifying a particular individual who posed a threat," the plaintiff in *Rodriguez*, provided specific information – his former gang's threat of death due to his renunciation of membership, the presence of gang members at his prison, and requests for a transfer to another institution or for placement in protective custody to prevent an attempt on his life – such that '"a reasonable juror could find…that [the prison official] actually knew [plaintiff] faced a substantial risk of serious harm."' (quoting *Rodriguez*, 508 F.3d at 621-22)). Vague statements conveying "nothing about the nature of the anticipated risk" do not suffice. *Marbury*, 936 F.3d at 1237 (finding plaintiff's "statement that…another inmate told him another inmate intended to harm him" did not satisfy the standard for "deliberate indifference to a substantial risk").

"Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she 'knew of ways to reduce the harm' but knowingly or recklessly declined to act." *Id.* (quoting *Rodriguez*, 508 F.3d at 620); *see also Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more

blameworthy than negligence." (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976))); *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (en banc) (holding a plaintiff must establish the prison official, in disregarding the risk to plaintiff, "acted with 'subjective recklessness as used in the criminal law,'" that is, the prison officials "actually knew that his conduct - his own acts or omissions - put the plaintiff at substantial risk of serious harm." (quoting *Farmer*, 511 U.S. at 839; *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) ("Merely negligent failure to protect an inmate from attack does not justify liability under section 1983, however." (citing *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986))).

Finally,

> [S]ection 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *Williams*, 689 F.2d at 1380 (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 692, (1978)); *Redman v. County of San Diego*, 942 F.2d 1435, 1439 (9th Cir. 1991) (en banc) (requiring an act or omission causing the constitutional deprivation), cert. denied, 502 U.S. 1074 (1992). Section 1983 thus focuses [the] inquiry on whether an official's acts or omissions were the cause— not merely a contributing factor—of the constitutionally infirm condition.

*LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) (alterations supplied, parallel citations omitted).

First, Southward's allegations, if true, establish Officer Neloms sexually abused her:

> Congress unanimously passed PREA, 34 U.S.C. § 30301 et seq., to "establish a zero-tolerance standard" for sexual assault in United States prisons. *See id.* §§ 30302(1), 30309(9)–(11); About – Prison Rape

> Elimination Act, National PREA Resource Center (last visited Aug. 2, 2021), https://www.prearesourcecenter.org/about/prison-rape-elimination-act. PREA directed the Attorney General to "publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape." 34 U.S.C. § 30307(a)(1). The rule established standards for investigating and responding to allegations of sexual abuse committed against prisoners. 28 C.F.R. §§ 115.61–68, 115.71–73.

*DeJesus v. Lewis,* 14 F.4th 1182, 1193 n.8 (11th Cir. 2021). Congress anticipated enacting PREA would "protect the Eighth Amendment rights of Federal, State, and local prisoners." 34 U.S.C. § 30302(7). Pursuant to the PREA's directive, the United States Attorney General published "national standards for the detection, prevention, reduction, and punishment of prison rape."[2] 34 U.S.C. § 30307(a)(1).

Pertinent to Southward's allegations, the PREA defines sexual abuse of a detainee by a staff member as "[a]ny attempt, threat, or request by a staff member . . . to engage in [sexual contact]" and "[v]oyeurism by a staff member, contractor, or volunteer." 28 C.F.R. §§ 115.6(6) & (8). "Voyeurism by a staff member . . . means an invasion of privacy of an inmate, detainee, or resident by staff for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all or part of an inmate's naked body or of an inmate

[2] The PREA – along with other federal and state statutes – serves as a guidepost for identifying what conduct "violates contemporary standards of decency." *DeJesus v. Lewis*, 14 F.4th 1182, 1196 n.13 (11th Cir. 2021) (citing *Sconiers v. Lockhart*, 946 F.3d 1271 (11th Cir. 2020) (Rosenbaum, J., concurring))).

performing bodily functions." 28 C.F.R. § 115.6.

Furthermore, although Officer Neloms's conduct had not yet escalated to sexual touching, "instances of sexual assault often begin with lesser violations of prison policy and are thus 'relevant to the totality of the circumstances at a prison that may have contributed to the sexual misconduct.'" *Poore v. Glanz*, 724 F. App'x 635, 642 (10th Cir. 2018) (alteration adopted) (quoting *Keith v. Koerner*, 843 F.3d 833, 842 (10th Cir. 2016)). Indeed, Officer Neloms's conduct escalated greatly over the three nights he abused Southward: he first asked Southward to expose herself; then requested she "open up" her genitals while she exposed herself; he then sexually extorted her to showcase her breasts and genitals in exchange for privileges, including phone privileges, shower privileges, and release from suicide watch; and finally he pleasured himself when Southward exposed herself in compliance with his demands. Officer Neloms's escalating conduct showcased Southward faced a substantial risk of sexual assault which constitutes serious harm.

> Some things are never acceptable, no matter the circumstances. Sexual abuse is one. Sexual abuse "has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." *Graham v. Sheriff of Logan Cty.*, 741 F.3d 1118, 1122-23 (10th Cir. 2013) (citation and quotation marks omitted). Nor does it comport with contemporary standards of decency. Congress itself implicitly recognized as much in 2013, when it amended the Prison Litigation Reform Act ("PLRA") to allow prisoners to recover damages "for mental or emotional injury suffered while in custody[,] without a prior showing of physical injury," when the prisoner can demonstrate "the commission of a sexual act" as the basis for the damages he seeks. See 42 U.S.C. § 1997e(e) (2013).

*Sconiers v. Lockhart*, 946 F.3d 1256, 1259 (11th Cir. 2020). *See also Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) ("While an inmate 'need not await a tragic event' before seeking relief," she must establish "a condition of his confinement 'pose[s] an unreasonable risk of serious damage to his future health' or safety." (quoting *Helling*, 509 U.S. at 33, 35)).

Southward alleges she "repeatedly reported [Defendant] Neloms's sexual harassment to Officer McDaniel," but Officer McDaniel failed to act, and thus, enabled Neloms to continue his sexual abuse. (Doc. 12 at 4 ¶ 19). When Southward reported Officer Neloms's escalating sexual abuse to Officer McDaniel, McDaniel acquired knowledge Southward faced a substantial risk of serious harm. Despite this knowledge, Officer McDaniel took no action to prevent future instances of sexual abuse, thereby exhibiting deliberate indifference to the substantial risk Southward faced. *See Farmer*, 511 U.S. at 842 ("[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."); *Cox v. Nobles*, 15 F.4th 1350, 1360 (11th Cir. 2021) ("An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly declined to act or if he knew of ways to reduce the harm but recklessly declined to act." (quoting *Rodriguez*, 508 F.3d at 620)). *See also* 28 C.F.R.

§ 115.61(a) (requiring agencies[3] to mandate "all [jail] staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility").

Because Southward stated a viable Fourteenth Amendment failure-to-protect claim against Officer McDaniel, the undersigned next assesses whether applicable law clearly established Officer McDaniel's alleged inaction violated a detainee's constitutional rights.

**B. Clearly Established Law**

Southward's factual allegations incite "a broad statement of principle within the Constitution, statute, or case law" that clearly established her constitutional rights. *Hill*, 797 F.3d at 979. "[T]here is no question that [Southward] had a clearly established right to be free from sexual abuse while incarcerated." *Bridges v. Poe*, 155 F.4th 1302, 1313 (11th Cir. 2025) (citing *Sconiers v. Lockhart*, 946 F.3d 1256, 1267 (11th Cir. 2020)); *c.f.*, *Bridges*, 155 F.4th at 1317-18 ("[L]iability will not attach for failure to train where the proper response 'is obvious to all without training or supervision.' . . . Both Buzbee and Boyd testified that they knew from 'common sense' and 'common knowledge' that it was wrong for them to have sex with or sexually harass female inmates. No argument

[3] PREA defines "agency" as "the unit of a State, local, corporate, or nonprofit authority, or of the Department of Justice, with direct responsibility for the operation of any facility that confines inmates, detainees, or residents, including the implementation of policy as set by the governing, corporate, or nonprofit authority." 28 C.F.R. § 115.5.

there—the fact that 'a police officer should not (and may not) sexually assault citizens in his custody is obvious to all without training or supervision.'") (citations omitted)); *Boxer X v. Harris*, 437 F.3d 1107, 1110–11 (11th Cir. 2006) ("We joined other circuits recognizing a prisoner's constitutional right to bodily privacy in *Fortner v. Thomas,* 983 F.2d 1024 (11th Cir. 1993). In *Fortner,* 'female officers solicited male prisoners to masturbate and otherwise exhibit their genitals for the female officers' viewing.' *Id.* at 1027. We held that this violated the prisoner's right to privacy. *Id.* at 1030. *Fortner* outlined a very narrow privacy right involving people's 'special sense of privacy in their genitals' and noted that 'involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating.' *Id.* (citing *Lee v. Downs,* 641 F.2d 1117, 1119 (4th Cir.1981)). We have reaffirmed the privacy rights of prisoners emphasizing the harm of compelled nudity. *See Padgett v. Donald,* 401 F.3d 1273, 1281 (11th Cir.2005). . . .In this case, Boxer's claim is clearly within the scope of the right established in *Fortner.* Harris, a female prison guard, solicited Boxer to masturbate for her viewing. If his allegations are true, Boxer has stated a § 1983 claim for violation of his privacy rights under *Fortner.*"), *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010) *as recognized by Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020).

And every reasonable prison official would have known that the conduct alleged in the second amended complaint – Officer Neloms's sexual extortion along with his escalating voyeurism and exhibitionism for his own sexual gratification – violated

Southward's right to be free from sexual abuse.[4] In a similar vein, no reasonable officer

[4] Officer Neloms's purported actions proceed well beyond verbal sexual harassment and actually constituted sexual abuse. As early as 2006 the Eleventh Circuit recognized "that severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment," emphasizing "[s]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006), *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010) *as recognized by Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020). In 2020, the Eleventh Circuit recognized sexual abuse violates the Eighth Amendment even when accompanied by a *de minimus* physical injury. *Sconiers*, 946 F.3d at 1266-67 ("The lack of serious physical injury, considered in a vacuum, cannot snuff out Eighth Amendment sexual-assault claims.").

In *DeJesus v. Lewis*, the Eleventh Circuit answered "the question left open by *Sconiers* [-] what type of conduct qualifies as a sexual assault." 14 F.4th 1182, 1196 (11th Cir. 2021). The Eleventh Circuit held:

> that the "sexual assault" of a prisoner by a prison official in violation of the Eighth Amendment occurs when the prison official, acting under color of law and without legitimate penological justification, engages in a sexual act with the prisoner, and that act was for the official's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner. *See* 18 U.S.C. § 2246(2). At a minimum, those sexual acts include intentional sexualized touching underneath clothing,[ ] such as fondling or penetration; coerced sexual activity; combinations of ongoing harassment and abuse; and exchanges of sexual activity for special treatment or to avoid discipline. . . .
>
> A broader range of conduct certainly qualifies as sexual assault, depending on the facts of a given situation.

*DeJesus*, 14 F.4th at 1196 (footnotes omitted). The Eleventh Circuit further "recognize[d] [sexual assault] may include conduct that does not require any physical contact with a prisoner." *DeJesus*, 14 F.4th at 1197 n. 14 (citing 28 C.F.R. § 115.6(7)–(8) (adopting a broad definition of sexual abuse that violates PREA); National Standards To Prevent, Detect, and Respond to Prison Rape, 76 FR 6248-01, 2011 WL 318532, at *6250–51 (Feb. 3, 2011) (explaining that DOJ's proposed standards use the term sexual abuse because it "captures a broader range of sexual victimization than rape")).

Although the Eleventh Circuit did not "consider whether non-physical contact can constitute 'sexual assault' for purposes of establishing an excessive-force claim under the Eighth Amendment" because *DeJesus* "involve[d] alleged physical contact," *id.*, this does not lessen the clarity surrounding the substantial threat of serious harm Officer Neloms's alleged conduct posed to Southward. The Eleventh Circuit's failure to delineate the exact outer boundaries of sexual assault for the purposes of an excessive force claim does not incite confusion over whether Officer Neloms's alleged conduct here posed a substantial threat of serious harm. Officer Neloms's conduct fell within the PREA's definition of sexual abuse, and the PREA – along with other federal and state statutes – serves as a guidepost for identifying what conduct "violates contemporary standards of decency." *DeJesus*, 14

could conclude Officer Neloms's sexual abuse did not place Southward at a substantial risk of serious harm or that complete inaction constituted a reasonable response to this risk. *See Farmer*, 511 U.S. at 842 ("[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."); *Cox*, 15 F.4th at 1360 ("An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly declined to act or if he knew of ways to reduce the harm but recklessly declined to act." (quoting *Rodriguez*, 508 F.3d at 620)); 28 C.F.R. § 115.61(a) (requiring agencies to mandate "all [jail] staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility").

Accordingly, Officer McDaniel does not stand entitled to qualified immunity on the afore-discussed claim, and the court should deny Officer McDaniel's motion to dismiss.

**C. Right to Bodily Privacy**

As early as 1993, the United States Court of Appeals for the Eleventh Circuit recognized a prisoner's right to bodily privacy. In *Fortner v. Thomas*, the Eleventh Circuit "recogniz[ed] a prisoner's constitutional right to bodily privacy because most people

---

F.4th at 1196 n.13 (citing *Sconiers*, 946 F.3d at 1271 (Rosenbaum, J., concurring)).

have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating"; the Court clearly established the principle that, absent a legitimate penological reason, individuals maintain a right to bodily privacy, in particular the right not to have their genitals exposed to onlookers. 983 F.2d 1024, 1030 (11th Cir. 1993) (internal quotation marks and citation omitted).

Southward's allegations create a plausible inference Officer McDaniels violated that right. Southward contends jail officials provided her only a "turtle suit," similar to a heavy blanket, when they placed her on suicide watch. (Doc. 12 at 2 ¶ 9). The "turtle suit" provided "insufficient covering to prevent [Southward's] breasts and genitals from being visible to male corrections officers, trustees, and other males in the jail." (Doc. 12 at 2 ¶ 9). Southward "repeatedly reported" Officer Neloms's sexual abuse to Officer McDaniel while Southward remained on suicide watch. (Doc. 12 at 2 ¶ 9). Because Southward remained on suicide watch and could not leave her cell, a reasonable inference ensues that Officer McDaniel and Southward spoke at her cell, and Officer McDaniel personally observed Southward's inadequate covering but did not provide Southward with additional covering to protect her breasts and genitals.[5] (*See* Doc. 12). Accordingly, Officer McDaniel's motion to dismiss warrants dismissal on this

[5] If Southward could expose herself to Officer Neloms while in the isolation cell, and observe Officer Neloms licking his lips and touching his groin through his pants, it necessarily follows that the construction of the isolation cell did not prevent Officer McDaniel from observing Southward's lack of adequate covering.

alternative ground.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** the court **DENY** Officer McDaniel's Motion to Dismiss. (Doc. 18).

## V. NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within **14 days.** The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection. The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order. Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify in whole or in part the Magistrate Judge's findings of fact and recommendations. The District Judge will conduct a hearing if required by law and may exercise discretion

to conduct a hearing or otherwise receive additional evidence. Otherwise, the District Judge may consider the record developed before the Magistrate Judge in making an independent determination of the relevant legal issues. The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment entered by a District Judge.

**DONE** this 16th day of July, 2026.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE